**UNITED STATES of America,
Appellee,**

v.

**Clarence Eugene EVANS, Appellant.**

**No. 71–1061.**

United States Court of Appeals,
Eighth Circuit.

Aug. 16, 1971.

Gary S. Gill, Des Moines, Iowa, for appellant.

Richard J. Barry, Asst. U. S. Atty., Allen L. Donielson, U. S. Atty., Des Moines, Iowa, for appellee.

Before LAY, HEANEY and BRIGHT, Circuit Judges.

BRIGHT, Circuit Judge.

An unknown person or persons broke into an F.D.I.C. insured state bank facility located at Swaledale, Iowa, on November 2, 1970, and removed three hundred blank money orders. On or about November 6, 1970, Clarence Eugene Evans, the appellant here, received $150 in exchange for one of these bank money orders, which had been filled in to show a face value of that amount. This transfer furnished the basis for the conviction of Evans, after trial by jury, for unlawful possession of a stolen bank money order, valued in excess of $100, in violation of 18 U.S.C. § 2113(c). The district court imposed a felony sentence of six years imprisonment pursuant to 18 U.S.C. §§ 2113(b) and (c). Evans brings this timely appeal contending that he should not have been convicted of a felony because the money order did not have a value in excess of $100 at the time it was taken from the bank. He argues that, due to the peculiar phrasing of 18 U.S.C. §§ 2113(b) and (c),[1] the money order must be valued as of the time it was taken rather than the time it was transferred; thus valued, his crime of possession would be a misdemeanor under the statute.

We find that this argument raises a novel and somewhat difficult question regarding the construction of 18 U.S.C. §§ 2113(b) and (c). Our examination of the language of § 2113 against the background of its statutory history convinces us that the district court correctly construed the statute in imposing a felony sentence upon Evans.

We turn first to the statutory language. Subsection 2113(c) makes it a crime to receive, possess, conceal, store, barter, sell or dispose of "any property or money or other thing of value knowing the same to have been taken from a bank, or a savings and loan association, in violation of subsection (b) of this section. * * *" For violation of this subsection, the penalty is that "provided by said subsection (b) for the taker." Subsection (b) prescribes a sentence of not more than ten years for a taker who takes bank property valued in excess of $100, and a sentence of not more than one year for one who takes bank property valued at $100 or less (see n. 1, *supra*).

Relying on subsection (b), Evans argues that since the proof in this case shows that the stolen money order which he received possessed only a nominal value ($.015) when it was taken, the felony conviction cannot stand. Evans cites no authority in support of his position, but

---

1. 18 U.S.C. §§ 2113(b) and (c) read:

(b) Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank, or any savings and loan association, shall be fined not more than $5,000 or imprisoned not more than ten years, or both; or

Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value not exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank, or any savings and loan associaton, shall be fined not more than $1,000 or imprisoned not more than one year, or both.

(c) Whoever receives, possesses, conceals, stores, barters, sells, or disposes of, any property or money or other thing of value knowing the same to have been taken from a bank, or a savings and loan association, in violation of subsection (b) of this section shall be subject to the punishment provided by said subsection (b) for the taker.

argues that the penalty term in subsection (c), "punishment provided by subsection (b) for the taker," interpreted literally, limits his punishment to that which could have been received by the taker of that *particular* money order. The taker of that money order could have received only a one-year sentence under subsection (b).

The government, in support of affirmance, presents two contentions which are somewhat contradictory. First, referring to prosecution testimony that each blank money order possessed a value of from $5.00 to $10.00 on a "thieves market," the government argues that the total value of the property stolen by the taker determines the receiver's penalty. In short, the government contends that a receiver of stolen property valued at less than $100, which is part of stolen loot valued at more, is subject to the felony penalty. Under this theory, since the taker removed three hundred money orders totaling at least $1,500 in value, thereby committing a felony, the receiver of any of the money orders incurs felony liability regardless of the value of the property received. The Ninth Circuit placed this construction upon § 2113 in United States v. Bolin, 423 F.2d 834 (9th Cir.), cert. denied, 398 U.S. 954, 90 S.Ct. 1882, 26 L.Ed.2d 297 (1970).

The government's second contention tracks the holding of the district court. Judge Stephenson adopted the position that a receiver's penalty is determined by the value of the property which he received or possessed regardless of the value of the property stolen. Accordingly, the jury was instructed that: " 'Value' as used in Section 2113 * * * means the market value of the bank's property at the time it was being possessed, bartered, sold or disposed of * * *." Under this construction of § 2113, the jury could find Evans guilty of the felony charge since he received $150 in exchange for the money order in question.

In one respect, appellant's construction of § 2113 parallels that placed upon the statute by the *Bolin* court; both focus upon the amount taken by the taker to determine the receiver's penalty. When literally read, the language of the statute furnishes superficial validity to this emphasis upon the act of the taker. We believe, however, that the statutory history of § 2113 renders this approach unacceptable.

The provisions of § 2113(c) originated in the Act of June 29, 1940, ch. 455, 54 Stat. 695; this Act added the following provision to existing law defining offenses against banks:

> (c) Whoever shall receive, possess, conceal, store, barter, sell, or dispose of any property or money or other thing of value knowing the same to have been taken from a bank in violation of subsection (a) of this section shall be fined not more than $5,000 or imprisoned not more than ten years, or both.

The statutes providing punishment for offenses committed against banks were revised to the present form in 1948. Act of June 25, 1948, ch. 645, 62 Stat. 796–97. At that time, the penalty section of the 1940 version of § 2113(c) was reworded to read: "[S]hall be subject to the punishment provided by said subsection (b) for the taker." The reviser's notes explain this change as follows:

> Also the provisions of subsection (b) measuring the punishment by the amount involved were extended and made applicable to the receiver as well as the thief. There seems no good reason why the thief of less than $100 should be liable to a maximum of imprisonment for one year and the receiver subject to ten years. [Historical and Revision Notes, following 18 U.S.C.A. § 2113]

Two matters appear quite clear from this brief history. First, the crime of possession of stolen bank property originated independently from the crime of burglary or robbery of a bank. Secondly, the 1948 amendment was designed to correct an anomalous punishment scheme which subjected a possessor of stolen property, valued at less than $100,

to a greater penalty than a thief of the same amount.

■ We must decide whether Congress, in amending subsection (c) to equalize the penalties for the two crimes of taking and receiving bank property, also intended to create a derivative penalty scheme. Given the independent origins of the two crimes, we glean from the statutory change no intent that the receiver's punishment must be measured by that of the taker. We believe that Congress intended to establish equal, but distinct, penalties for two separate crimes.

We are not persuaded by the rationale adopted by the Ninth Circuit in *Bolin, supra,* 423 F.2d 834. There, two men, who robbed the bank of $1,356, gave Bolin $65.60 of the robbery proceeds. Bolin was convicted under 18 U.S.C. § 2113(c) of receiving property stolen from a federally insured bank, and was sentenced to serve a term of ten years. In sustaining his felony conviction, the court stated:

> Congress intended to punish knowing receivers of stolen bank property. The punishment meted out to the recipient is governed by the amount stolen by the taker. If the amount taken is over $100, the recipient may be sentenced up to ten years. If the amount taken is $100 or less, the recipient may be sentenced up to one year. [*Bolin, supra* at 835–836]

Continuing, the court noted: "The fact that [the receiver] has received less than $100 is not relevant to the deterrent purpose of the statute." *Id.* at 838.

It seems to us that the basic fallacy of this construction is that it defines the severity of the possessor's crime not in terms of his wrongful act, but in terms of the wrong committed by the thief, and, thus, contravenes a basic principle underlying criminal law—that the punishment should fit the defendant's crime, not that of another.

■ Moreover, in order to reach the conclusion that the act of the taker determines the receiver's penalty, the phrase "for the taker" must be read "for the taker [of such bank property]." We do not think that this is what Congress meant. Rather, we believe that Congress used the word "taker" in the general sense, not referring to the actual taker, but to a hypothetical one.

In using the phrase "for the taker" in its hypothetical sense, Congress intended to incorporate the penalty provisions of subsection (b) into subsection (c). Thus, to determine a receiver's penalty, focus must be placed upon the penalty to which the taker would be subject for taking the amount received, not upon the amount taken by the taker.

■ Our construction of § 2113 is consistent with the construction placed upon the statute by Judge Stephenson. He adopted the practical view that a receiver's penalty must be measured by the value of the property which is received or possessed. The jury found that the money order was worth $150 at the time it was transferred. The statute prescribes a sentence of not more than ten years for a taker of bank property of this value. Under our construction, Evans, as a receiver, was subject to the same penalty.

Our conclusion is consistent with the construction of other statutes setting criminal penalties for the possession of stolen federal property. For example, 18 U.S.C. § 641 makes it a crime to possess property stolen from the United States; it provides that the taker or the possessor shall be subject to a felony penalty of ten years unless the value of such property does not exceed the sum of $100, in which event the crime is deemed a misdemeanor, subjecting the miscreant to imprisonment for not more than one year. Under § 641, the nature of the crime of the possessor is ascertained by reference to value of the property in his hands, not in the hands of the taker. United States v. Kramer, 289 F.2d 909, 920–921 (2d Cir. 1961); *see* Churder v. United States, 387 F.2d 825, 833 (8th Cir. 1968); Jalbert v. United States, 375

F.2d 125, 126 (5th Cir.), cert. denied 389 U.S. 899, 88 S.Ct. 225, 19 L.Ed.2d 221 (1967).

We reject the government's suggestion that we follow the *Bolin* decision as a basis for affirmance. Parenthetically, we note that even if we did follow the *Bolin* rationale, we would be required to reverse Evans' conviction because the jury never passed upon the question whether the value of the three hundred blank money orders, when stolen, amounted to $1,500 based upon the "thieves market," or their nominal value to the bank of $4.50.

 Finally, we find no merit in appellant's claim that the government failed to establish the value of the money order in question at more than $100. The fact that Evans received more than $100 for it establishes a sufficient basis for its valuation. United States v. Johnson, 442 F.2d 318 (8th Cir. 1971), and cases cited therein.

Affirmed.