**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James F. KRAASE, Defendant-
Appellant.**

**No. 72-2047.**

United States Court of Appeals,
Seventh Circuit.

Argued May 23, 1973.

Decided July 16, 1973.

---

**2.** Appearing in footnote 3 of the majority opinion.

James M. Shellow, Stephen M. Glynn, James A. Walrath, Milwaukee, Wis., for defendant-appellant.

David J. Cannon, U. S. Atty., D. Jeffrey Hirschberg, Asst. U. S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before CLARK,[*] Associate Justice, CASTLE, Senior Circuit Judge, and STEVENS, Circuit Judge.

CLARK, Associate Justice.

James Frank Kraase stands convicted by a jury of selling a .25 caliber automatic pistol to Special Investigator Edward M. Trucksa of the Alcohol Tobacco and Firearms Division of the Internal Revenue Service in violation of 18 U.S.

C. § 922(a)(5). That section provides in pertinent part:

> it shall be unlawful . . . for any person, (other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector) to . . . sell . . . any firearm to any person (other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector) *who the transferor knows or has reasonable cause to believe resides in any State other than that in which the transferor resides* . . . (Emphasis supplied.)

The crucial fact in this case is that while Trucksa represented himself to Kraase as an Illinois resident, in fact both Trucksa and Kraase were Wisconsin residents at the time of the sale. The question, therefore, is whether the unlicensed seller of a firearm can be convicted under § 922(a)(5) where both the purchaser and seller are residents of the same state, although the seller has reasonable cause to believe otherwise. We conclude that he cannot.

1. *Factual Background:*

The facts are clear and concise. Special investigator Trucksa telephoned Kraase on July 22, 1971, and inquired about buying some handguns. On July 27 the two men met in the parking lot of a Milwaukee restaurant and Trucksa purchased a .25 caliber automatic pistol. Kraase gave Trucksa a government transfer form to fill out, but Trucksa left blank the portion calling for the address and driver's license number of the purchaser. Kraase then stated that it was necessary to put down a Wisconsin address and asked Trucksa whether he had one he could use. Trucksa replied that his brother-in-law lived in Wisconsin but that he did not want to use his address. Kraase then suggested that Trucksa come up with an address, and the latter suggested Rural Route 1 and asked what town to use. Kraase then picked up a road map and selected the

---

[*] The Honorable Tom C. Clark, Associate Justice of the Supreme Court of the United States, Retired, is sitting by designation.

town of Elkhorn, Wisconsin. Trucksa wrote "R.R.1, Elkhorn, Wisc." on the transfer form. Kraase then supplied a driver's license number for the form by combining the last three digits of his own Wisconsin driver's license with the number on the Illinois driver's license that Trucksa displayed.

The foregoing facts established to the satisfaction of the jury that Kraase had "reasonable cause to believe" that Trucksa was a resident of a state other than Wisconsin. Kraase does not contend otherwise but argues that he cannot be convicted under the statute because Trucksa was concededly a Wisconsin resident at the time of the purchase.

## 2. *Construction of the Statute:*

The statutory language of § 922(a)(5) is ambiguous. The Government contends that its literal language makes the non-resident status of the transferee irrelevant where the transferor has "reasonable cause to believe" that the transferee resides in a state other than that of the transferor. If this be true the section "dramatically intrudes upon traditional state criminal jurisdiction," United States v. Bass, 404 U.S. 336, 350, 92 S.Ct. 515, 524, 30 L.Ed.2d 488 (1971), for it punishes the unlicensed sale of firearms regardless of the actual residence of the purchaser. In view of the complete absence of legislative history supporting such an unusual reach of federal authority, we have concluded that it is highly improbable that Congress intended such a result. Therefore, we interpret the statutory language to mean that the purchaser must in fact be a non-resident and that the "reasonable cause to believe" clause serves merely to lighten the Government's burden of proving subjective intent.

Moreover, the Government's interpretation of the "reasonable cause to believe" clause becomes increasingly improbable when considered in the context of other provisions of § 922, which prohibit firearm sales to persons who the seller knows or has reasonable cause to believe are under eighteen, ex-convicts, fugitives from justice, drug users or addicts, or mental incompetents. 18 U.S.C. §§ 922(b)(1), 922(d). It would no doubt come as a surprise to legitimate gun dealers that they could be convicted for an otherwise lawful firearms sale if the Government could establish that they had reasonable cause to believe that the purchaser fell into one of these prohibited categories.

Furthermore, there is not a word in the legislative history of § 922(a)(5) that supports the interpretation urged by the Government in affirmance of appellant's conviction. The predecessor statutory provision, § 922(a)(5) of the Omnibus Crime Control and Safe Streets Act of 1968, stated:

> It shall be unlawful . . . for any person to . . . sell . . . to any person . . . who resides in any State other than that in which the transferor resides . . . —any firearm . . .. 1968 U.S.Code Cong. & Admin.News, p. 275.

Clearly Kraase could not have been convicted under this statute. Section 922(a)(5) was amended into its present form by the Gun Control Act of 1968. The introduction of the "reasonable cause to believe" language is not even mentioned in the House Report; on the contrary, the report affirmatively refers to § 922(a)(5) as "prohibiting any unlicensed person from transferring in any way a firearm to another unlicensed person *who resides in another state.*" (Emphasis supplied.) 1968 U.S.Code Cong. & Admin.News, p. 4419. There is likewise no indication that the "reasonable cause to believe" language used in subsections (b)(1), (b)(3), and (d) was intended in any way to enlarge their coverage. 1968 U.S.Code Cong. & Admin.News, pp. 2167, 2204, 4419, 4420, 4429–30. For example, the overall purpose of the Congress is clearly revealed in the legislative comments on § 922(b)(3), which includes the identical "reasonable cause to believe" clause:

> The provisions of the Title which prohibits a licensee from disposing of

firearms . . . to persons who are not residents of the State in which he conducts his business is justified by the record, which is replete with testimony documenting the fact that the purchase of such firearms by persons in other than their residence State is a serious contributing factor to crime. 1968 U.S.Code Cong. & Admin.News, p. 2167.

In Rewis v. United States, 401 U.S. 808, 811–812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1971), Mr. Justice Marshall wrote for the Court:

> [W]e are struck by what Congress did not say. Given the ease with which citizens of our Nation are able to travel and the existence of many multi-state metropolitan areas, substantial amounts of criminal activity, traditionally subject to state regulation, are patronized by out-of-state customers . . . but the fact that [these considerations] are not even discussed in the legislative history . . . strongly suggests that Congress did not intend that the Travel Act should apply to criminal activity solely because that activity is at times patronized by persons from another state.

This statement fits well into the context of the present case and supports our conclusion that Kraase cannot be convicted under § 922(a)(5) for selling a firearm to a resident of Kraase's own state.

3. *Cases Construing Similar Language in other Statutes:*

Our interpretation of § 922(a)(5) finds support in prior decisions construing similar specific intent language in the federal perjury statute, 18 U.S.C. § 1621, which requires only that the accused have uttered a sworn statement that he "does not believe to be true." The courts still require proof that the statement is false. United States v. Hagarty, 388 F.2d 713, 716, n. 2. (7 Cir. 1968). See Bronston v. United States, 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973); Blumenfield v. United States, 306 F.2d 892, 897 (8 Cir. 1962). See also 18 U.S.C. § 2312 (Dyer Act); 18 U.S.C. §§ 793, 794 (harboring certain persons), 18 U.S.C. § 2511(1)(c) (disclosing information from a wire-tap).

4. *Ambiguity as to Ambit of Criminal Statute:*

To the extent that any ambiguity lingers after consideration of the section's language and its legislative history, we base our decision today on .the salutary principle that criminal statutes should be strictly construed; or, in the language of Mr. Justice Frankfurter:

> When Congress has the will it has no difficulty in expressing it . . . that is, of defining what it desires to make the unit of prosecution . . . when Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity. Bell v. United States, 349 U.S. 81, 83, 75 S. Ct. 620, 622, 99 L.Ed. 905 (1955). (Cited with approval in Rewis v. United States, *supra,* 401 U.S. at 812, 91 S.Ct. at 1059).[1]

Since Kraase may not be further prosecuted for the conduct set out in the indictment, we do not reach the other grounds which he urges for reversal.

The judgment is reversed and the case is remanded for dismissal of the indictment.

---

1. The Government relies heavily on United States v. Colicchio, 470 F.2d 977 (4 Cir. 1972), to support its interpretation of the statute. However, that decision devotes only one sentence to the statutory interpretation issue and cites as authority only the District Court decision which we here reverse.